UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Brenna M., <br><br>            Plaintiff, <br><br> v. <br><br> Kilolo Kijakazi, Acting Commissioner of Social Security, <br><br>            Defendant. | Civil No. 22-CV-00006 (MEG) <br><br><br><br> November 1, 2022 |

## RULING ON PENDING MOTIONS

Plaintiff, Brenna M.[1], appeals the decision of the Commissioner of Social Security ("Commissioner" or "Defendant"), rejecting her application for Title XVI Supplemental Security Income ("SSI"). (Compl., Doc. # 1.) She moves for an order reversing the Commissioner's decision and remanding the case for a new hearing and decision for calculation of benefits. (Doc. # 1, at 3.) The Commissioner moves for an order affirming that decision. (Doc. # 21.)

For the reasons detailed below, Plaintiff's Motion to Reverse the Decision of the Commissioner (Doc. # 18) is **GRANTED** and the Commissioner's Motion for an Order Affirming the Decision (Doc. # 21) is **DENIED**.

### I.      FACTUAL AND PROCEDURAL BACKGROUND

On April 19, 2019, Plaintiff filed an application for SSI benefits under Title XVI. (R. 16.) She claimed that she could not work due to Ehlers Danlos Syndrome, Fibromyalgia, PTSD, Bipolar Type 2 with mixed episodes, Restless Leg Syndrome, Postural Orthostatic Tachycardia Syndrome,

---

[1]     Pursuant to Chief Judge Underhill's January 8, 2021, Standing Order, Plaintiff will be identified solely by first name and last initial, or as "Plaintiff," throughout this opinion. *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).

1

Idiopathic Hypersomnia, Scoliosis, Endometriosis, and Chronic Headache Disorder. (R. 128, 151.) She alleged a disability onset date of July 27, 2009, when she was 14 years old. (R. 16.)

On January 15, 2021, the ALJ issued an unfavorable decision to Plaintiff. (R. 16-30.) The ALJs are required to follow a five-step sequential evaluation process in adjudicating Social Security claims and ALJ Alexander Peter Borre's written decision followed that format. At Step One he found that Plaintiff had not engaged in substantial gainful activity since April 5, 2019, the application date. (R. 18.) At Step Two, he found that Plaintiff suffers from the severe impairments of obesity, Ehlers Danlos Syndrome, cervical spine degenerative disc disease, idiopathic hypersomnia, status-post right knee arthroscopy and MPFL reconstruction, left wrist fracture, and Bipolar Disorder and Posttraumatic Stress Disorder. (*Id.*) At Step Three, he concluded that Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the "Listings" – that is, the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (R. 19.) He then determined that, notwithstanding her impairments, Plaintiff retained the residual functional capacity to:

> [P]erform light work as defined in 20 CFR 416.967(b), but with the limitations described in this paragraph. The claimant could occasionally climb ramps and stairs, but she could never climb ropes, ladders or scaffolds. Furthermore, the claimant could occasionally balance, occasionally stoop, occasionally kneel, and occasionally crouch and occasionally crawl. Furthermore, the claimant could frequently finger and handle with the bilateral upper extremities and she [could] occasionally perform overhead reaching with the bilateral upper extremities. The claimant must avoid workplace hazards and could tolerate only occasional exposure to temperature and humidity extremes. Furthermore she could tolerate moderate exposure to noise. In addition, the claimant is precluded from work environments that have strict production quotas and she cannot interact with the public at the worksite and she could tolerate occasional interaction with coworkers and supervisors and she could tolerate occasional changes in the work setting.

(R. 22.)

At Step Four, the ALJ found that Plaintiff had no past relevant work. (R. 28.) Finally, at Step Five, the ALJ relied on the testimony of a vocational expert ("VE") to find that there are jobs

that exist in significant numbers in the national economy that Plaintiff can perform, including "office helper," "mail room sorter/clerk," and "price marker." (R. 29.) Accordingly, the ALJ determined that Plaintiff was not disabled from the date of her application, April 5, 2019, through the date of the decision, January 15, 2021.[2] (R. 20.)

On November 4, 2021, the Appeals Council denied Plaintiff's request for review. (R. 1-6.) Plaintiff filed this action on January 3, 2022. (Doc. # 1.) The Commissioner answered the complaint by filing the administrative record on March 3, 2022. (Doc. # 16.) On May 1, 2022, Plaintiff filed her motion for an order reversing the Commissioner's decision. (Doc. # 18.) On June 29, 2022, the Commissioner filed a motion for an order affirming that decision. (Doc. # 21.) Plaintiff has not filed a reply brief, and her time for doing so has expired. The parties' motions are therefore ripe for decision.

## II.  APPLICABLE LEGAL PRINCIPLES

To be considered disabled under the Social Security Act, "a claimant must establish an 'inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.'" *Smith v. Berryhill*, 740 F. App'x 721, 722 (2d Cir. 2018) (summary order) (quoting 20 C.F.R. § 404.1505(a)). To determine whether a claimant is disabled, the ALJ follows a familiar five-step evaluation process.

At Step One, the ALJ determines "whether the claimant is currently engaged in substantial gainful activity . . . ." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v.*

---

[2] The relevant period under review for Plaintiff's SSI benefits runs from April 5, 2019, the date she applied for benefits, through the date of the ALJ's decision, January 15, 2021. 20 C.F.R. §§ 416.330, 416.335; *see Frye v. Astrue*, 485 F. App'x. 484, 485 n.l (2d Cir. 2012) (summary order).

*Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)).  At Step Two, the ALJ analyzes "whether the claimant has a severe impairment or combination of impairments . . . ."  *Id.*  At Step Three, the ALJ evaluates whether the claimant's disability "meets or equals the severity" of one of the "Listings" – that is, the specified impairments listed in the regulations.  *Id.*  At Step Four, the ALJ uses a residual functional capacity ("RFC") assessment to determine whether the claimant can perform any of her "past relevant work."  *Id.*  At Step Five, the ALJ addresses "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's [RFC], age, education, and work experience."  *Id.*  The claimant bears the burden of proving her case at Steps One through Four.  *Id.*  At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform."  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 445 (2d Cir. 2012) (per curiam).

In reviewing a final decision of the Commissioner, this Court "perform[s] an appellate function."  *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981).  Its role is to determine whether the Commissioner's decision is supported by substantial evidence and free from legal error.  "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error."  *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted).

A disability determination is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner.  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . .") (citations omitted).  Though the standard is deferential, "[s]ubstantial evidence is more than a mere scintilla.  It means

4

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotation marks and citations omitted). When the decision is supported by substantial evidence, the Court defers to the Commissioner's judgment. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

An ALJ does not receive the same deference if she has made a material legal error. In other words, district courts do not defer to the Commissioner's decision where "an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks omitted). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

**III.   DISCUSSION**

Plaintiff raises two issues on appeal. She first argues that the ALJ failed to fully develop the record. (Doc. # 18-1, at 3-4.) Second, she argues that the ALJ's residual functional capacity determination was not supported by substantial evidence. (*Id*., at 4-7.)

"Whether an ALJ has satisfied his obligation to develop the record 'must be addressed as a threshold issue.'" *Caruso v. Saul*, No. 3:18-cv-1913 (RMS), 2019 WL 5853527, at *4 (D. Conn. Nov. 8, 2019) (quoting *Downes v. Colvin*, No. 14-cv-7147 (JLC), 2015 WL 4481088, at *12 (S.D.N.Y. July 22, 2015)). "Even if the ALJ's decision might otherwise be supported by substantial evidence, the Court cannot reach this conclusion where the decision was based on an incomplete record." *Id.* (citing *Moreau v. Berryhill*, No. 3:17-cv-396 (JCH), 2018 WL 1316197,

at *4 (D. Conn. Mar. 14, 2018)). Upon a thorough review of the administrative record, the Court concludes that the ALJ failed to adequately develop the record to include missing treatment records from APRN Kyle Fuller.

An ALJ has an affirmative obligation to develop a claimant's complete and accurate medical record. "[T]he Commissioner of Social Security . . . shall develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability." 42 U.S.C. § 423(d)(5)(B); *see also Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citation omitted) (noting that a "hearing on disability benefits is a non-adversarial proceeding," and as such, "the ALJ generally has an affirmative obligation to develop the administrative record"). "Even when a claimant is represented by counsel, it is the well-established rule in our circuit 'that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding.'" *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Lamay v. Comm'r of Soc. Sec.,* 562 F.3d 503, 508-09 (2d Cir. 2009) (internal quotation marks and brackets omitted)). An ALJ's failure to comply with this mandate is legal error. *Rose v. Comm'r of Soc. Sec.*, 202 F. Supp. 3d 231, 239 (E.D.N.Y. 2016).

### A. Dr. Joseph Tucker

Plaintiff first argues that the ALJ erred in failing to request a treatment record from Dr. Joseph Tucker from 2014. (Doc. # 18-1, at 3-4.) An Initial Disability Report completed by Plaintiff states that on November 6, 2014, Dr. Tucker treated her for "one visit" and diagnosed her with Ehlers Danlos Syndrome. (R. 287.) Plaintiff argues that the "Commissioner failed to properly develop the record . . . because she provided the specific date of Dr. Tucker's report, which was well before 2018." (Doc. # 18-1, at 3.) Because Dr. Tucker is a specialist in medical genetics, she

6

argues that his report would have assisted the ALJ in assessing her physical limitations. (*Id.*, at 3-4.) She further contends that the ALJ assigned persuasive weight to medical consultants who did not recognize Ehlers Danlos syndrome as a medically determinable impairment. (*Id.*, at 4.)

The ALJ did not err in his obligation to obtain medical evidence dating from 2014. Although the ALJ is obligated to assist claimants in obtaining medical evidence, he had no duty to obtain medical records dating to 2014. Pursuant to 20 C.F.R. § 416.912(b)(1), the agency is responsible for developing a claimant's "complete medical history for at least the 12 months preceding the month in which [she] files [her] application unless there is a reason to believe that development of an earlier period is necessary. . . ." 20 C.F.R. § 416.912(b)(1). Here, Plaintiff filed her SSI application in April 2019, (R. 16, 245), and the disability examiner sought documents from January 1, 2018, over twelve months prior to filing her application. (R. 527.) The regulations do not obligate the ALJ to seek documents dating back to 2014 and Plaintiff has not demonstrated that the ALJ erred as a matter of law in failing to obtain a single medical treatment record dated more than four years prior to her SSI application date. *See Dawn Lyn C. v. Kijakazi.*, No. 3:20-cv-00545 (TOF), 2021 WL 4398372, at *7 (D. Conn. Sept. 27, 2021) ("Plaintiff's inability to provide medical records dating to 1989 is not relevant to her claimed period of disability.").

Nor has Plaintiff demonstrated harm from the omission of the November 2014 diagnostic visit from the administrative record. Plaintiff does not report that she continued treatment with Dr. Tucker after the single visit in 2014 or that the ALJ failed to consider Plaintiff's diagnosis of Ehlers Danlos Syndrome. Here, the ALJ found Ehlers Danlos Syndrome to be a severe impairment and considered it in formulating Plaintiff's RFC. (R. 18-19, 22-28.) The ALJ considered Plaintiff's related complaints of chronic musculoskeletal pain, but noted that physical examinations showed generally benign findings of normal gait and station, full strength and intact

sensation, including her Function Report and the report of consultative examiner Dr. Jan Akus. (*See* R. 19-20, 22, 24 (citing Exs. 1A, 4A, 5E, 4F, 17F, 19F and 22F).)  The ALJ noted that the objective medical evidence demonstrated that after her right knee surgery her condition improved. (R. 24 (citing Exs. 4F, 17F at 8; *see* R. 483, 1152, 1174).)  The ALJ also accounted for her subjective complaints of pain related to Ehlers Danlos Syndrome, as well as the objective medical evidence of record in formulating her RFC limiting her to light work with additional postural and manipulative limitations.  (R. 22.)  On this basis, the ALJ did not err by failing to request the November 2014 treatment record from Dr. Tucker.

### B.  APRN Kyle Fuller

Next, Plaintiff argues that there is an obvious gap in treatment records from her mental health provider APRN Kyle Fuller, whom she saw for medication management.  (Doc. # 18-1, at 4.)  She raises two issues.  First, she states that the missing records relate to the disability period under review; specifically, between May 14, 2019 through October 2020.  Second, she states that she "informed the Commissioner on more than one occasion that she was treating regularly with [APRN] Fuller, but the record does not demonstrate that this evidence was obtained as required by [20 C.F.R. § 416.912(b)(1).]"  (*Id.* (citing R. 308, 323, 337).)

The record contains nine treatment records from June 26, 2018, through May 14, 2019.  (R. 574 (6/26/2018), 571-73 (8/16/2018), 568-70 (9/18/2018), 565-67 (10/2/2018), 563-64 (1/3/2019), 560-62 (1/10/2019), 556-58 (2/14/2019), 552-54 (3/21/2019), and 549-51 (5/14/2019).)  From May 14, 2019 through October 13, 2020, nearly seventeen months, there are no treatment records from APRN Fuller.  (R. 549-51, 1219-1232.)  The last two treatment records are dated October 13, 2020, and December 8, 2020, two days before the ALJ's hearing.  (R. 1219-22, 1223-1226, 38-73).  There is no evidence or contention that Plaintiff stopped treatment with APRN Fuller for that

period or that she was seen by another provider for medication management. Rather, the record demonstrates that Plaintiff communicated with the DDS Vocational Disability Examiner that she was engaged in treatment with APRN Fuller in 2019.

"The regulations require an ALJ to consider evidence that the claimant either submits – or informs the ALJ about – no later than five business days before the date of the scheduled hearing. 20 C.F.R. § 404.935(a)." *Schweers v. Berryhill*, No. 19-cv-6189 (RWL), 2020 WL 5518326, at *12 (S.D.N.Y. Sept. 14, 2020). At Exhibit 6E of the record is a ten-page undated letter from Plaintiff responding to a December 5, 2019, request from her Vocational Disability Examiner seeking verification of current medical and mental health treatment since April of 2019. (R. 308.) Plaintiff provided a list, written by APRN Fuller, stating she was seen for treatment on December 20, 2018, January 10, 2019, February 14, 2019, March 21, 2019, May 14, 2019, June 16, 2019, July 9, 2019, August 6, 2019, October 17, 2019, and December 19, 2019. (*Id.*) According to this representation, five treatment records, June, July, August, October and December 2019, are missing from the administrative record. The first treatment record available for review in 2020 is dated October 13, leaving an additional gap in the record for the first nine months of 2020. (R. 1219-1232.) A review of the prescription medication history contained in APRN Fuller's last treatment record dated December 8, 2020, shows that medication orders were entered in July and December 2019 and July 2020, during the period of missing treatment records. (R. 1225.) Additionally, Plaintiff submitted a medication list to the Social Security Office on September 15, 2020, reporting that APRN Fuller was prescribing psychiatric medications. (*See* R. 346 (medication list dated 9/15/2020), *see also,* R. 380 (medication list dated 10/22/2020 showing prescription orders were entered in December 2018, January, February, and December 2019).)

9

The Commissioner argues that the ALJ had no duty to obtain additional treatment records from Ms. Fuller because: (1) the administrative record contains more than 800 pages of medical records, including treatment notes from Ms. Fuller; (2) there are treatment records for ten sessions from June 2018 through December 2020; and (3) these records showed "no more than mild to moderate signs of depression with appropriate affect and intact cognition, memory, insight and judgment." (Doc. # 21-1, at 7 (citing R. 550, 552-53, 560, 565-66, 568-69, 572, 574, 1219-20, 1223-24).)

The records from APRN Fuller are not voluminous. Although there are more than 800 pages of medical records, "the 'real import lies in what those . . . pages say, not the mere fact the records exist.'" *Vecchitto v. Saul*, No. 3:19-cv-00726 (TOF), 2020 WL 4696791, at *5 (D. Conn. Aug. 13, 2020) (quoting *Holt v. Colvin*, No. 3:16-cv-01971 (VLB), 2018 WL 1293095, at *7 (D. Conn. Mar. 13, 2018)). Or in this case, the import lies in what is missing from the administrative record; nearly seventeen months of treatment records. (R. 549-51, 1219-1232.)

Here, a review of the treatment notes demonstrate both periods of improvement and periods of decline. The first treatment record from APRN Fuller is dated June 26, 2018.[3] Although this record is incomplete for that date, it reflects that Plaintiff requested antidepressants from APRN Fuller, reporting that Dr. Wessler, her primary care physician, took her off Prozac and her mental health had "gone down hill." (R. 574.) APRN Fuller noted that she reported she was not leaving the house, could not recall the last time she showered and described depressive symptoms including anhedonia, crying spells, decreased sociability, feelings of worthlessness, difficulty

---

[3] APRN Fuller indicated on a Mental Impairment Questionnaire dated May 14, 2019, that she first treated Plaintiff on April 30, 2018. (R. 545.) Plaintiff reported that she first treated with APRN Fuller on April 30, 2018. (R. 323, 337.) The first treatment record from APRN Fuller in the administrative record is dated June 26, 2018. (R. 574.)

10

concentrating, making decisions, and with memory. (*Id.*) The mental status examination from this date noted that Plaintiff showed signs of moderate depression, with a sad demeanor, appearing downcast, "listless and anergic" with depressed thought content and signs of anxiety. (*Id.*) On August 16, 2018, APRN Fuller noted that Plaintiff reported her mood was "much better" on Prozac and reported feelings of detachment and alienation from others with difficulty concentrating. (R. 571.) APRN Fuller stated that Plaintiff continued to exhibit signs of autistic process with impaired social interaction, communication and behavior. (*Id.*) Plaintiff presented with normal mood with no signs of depression or mood elevation, with blunt affect. (R. 572.) On September 18, 2018, Plaintiff presented feeling manic, depressed, crying or tearful, easily overwhelmed with difficulty functioning and concentrating. (R. 568.) "I am either go go go or I can't move I am so depressed." (*Id.*) She stated she could not stop eating and was "hyper overtalkative" or conversely sad "I want to cry" with no motivation. (*Id.*) She reported daily panic attacks, decreased sleep and a predominately depressed state intermingled with symptoms of hypomania. (*Id.*) She continued to describe symptoms of psychotic process and auditory hallucinations have worsened. (*Id.*) On October 2, 2018, Plaintiff presented struggling emotionally, "[s]uper badly depressed" and reported forty-eight hours of insomnia. (R. 565.) She described depressive symptoms such as lack of motivation, anergic and anhedonia, crying spells, excessive worry, difficulty with memory and anxiety. (*Id.*) On January 10, 2019, APRN Fuller noted that Plaintiff described feeling better since her medication dosage was increased two weeks earlier. (R. 560.) At this time she had no symptoms of manic process her physical activity was decreased, sleep patterns were improved, less distractable, racing thoughts were less frequent and less intense. (*Id.*) Her speech was no longer pressured or excessive. (*Id.*) On January 15, 2019, Plaintiff left a message stating she was "[f]eeling manic elevated mood and energy, only sleeping 1 hour/night going on since last visit."

(R. 559.) Her medications were changed. (*Id.*) On February 14, 2019, Plaintiff reported improvement with sleep, energy, mood, racing thoughts, pressured speech/excessive talking and irritability. (R. 556.) APRN Fuller noted continuing panic attacks, but although their frequency and intensity were decreased indicating improvement, crying and symptoms of manic process continued. (*Id.*) On March 7, 2019, Plaintiff called stating she was feeling depressed and was not showering or changing her clothes. (R. 555.) Her medication dosage was changed. (*Id.*) On March 21, 2019, Plaintiff reported that leaving the house was overwhelming and she was tired all the time. (R. 552.) APRN Fuller noted Plaintiff reported sadness, anergia, excessive fatigue, irritability, anhedonia was worsened, episodes of excessive worry, decreased sociability, some outbursts or expressions of anger, and difficulty with selfcare thinking and concentrating. (*Id.*) "Her relationships with family and friends have ceased." (*Id.*) On May 14, 2019, Plaintiff reported irritable mood and feeling overwhelmed and over stimulated with difficulty concentrating, with continuing panic attacks. (R. 549.) APRN Fuller noted improvement in symptoms of manic process which are episodic, depression symptoms continue to be described with anhedonia, excessive worry, difficulty concentrating, thinking, memory and making decisions. (*Id.*) Her care skills were reportedly impaired and she needed assistance or cues. (*Id.*)

From this point on, there is a seventeen-month gap in the treatment records until October 13, 2020.[4] In October 2020, APRN Fuller noted that Plaintiff described no symptoms of anergia

---

[4] Other objective evidence in the record demonstrates that Plaintiff's mental health symptoms presented with periods of improvement *and* decline. For example, on February 25, 2019, Plaintiff's primary care physician noted that she reported "more energy and is more active at home. Had some brief mania. Her meds have been adjusted." (R. 645.) On June 17, 2019, Dr. Wessler noted that Plaintiff reported that she "[h]as been more depressed and recently had Wellbutrin dose upped." (R. 618.) In a June 8, 2020, Disability Report Plaintiff stated that she had last seen APRN Fuller on April 28, 2020, and her next appointment was June 9, 2020. (R. 323.) None of APRN Fuller's treatment records for this period are in evidence.

or anhedonia.  (R. 1219.)   She denied difficulty concentrating and had fewer feelings of hopelessness or worthlessness.  (*Id.*)  She continued to feel sad, but her self-care skills were intact and unimpaired, her relationships with family and friends were normal and there was no impulsive behaviors or outbursts or expressions of anger reported.  (*Id.*)  The last treatment record is dated December 8, 2020.  (R. 1223-26.)

To be sure, the record also contains contrary evidence.  The Commissioner argues that these treatment records showed "no more than mild to moderate signs of depression with appropriate affect and intact cognition, memory, insight and judgment."  (Doc. # 21-1, at 7 (citing R. 550, 552-53, 560, 565-66, 568-69, 572, 574, 1219-20, 1223-24).)  However, Defendant appears to have selectively chosen portions of APRN Fuller's "exam" notes, which are not representative of the "interval history" provided in each progress note.  For example, APRN Fuller's "exam" notes consistently report that Plaintiff's affect was "appropriate, full range, congruent with mood"; associations were intact and logical with no signs of hallucinations, delusions or bizarre behaviors indicative of psychotic process.  (R. 574, 569, 565-66, 560, 556-57, 552-53, 550, 1219-1220, 1224.)  Cognitive functioning, fund of knowledge judgment and short and long term memory were intact.  (*Id.*)  She was fully oriented with cognitive functioning within the normal range.  (*Id.*)  Insight into problems appeared normal and judgment appeared intact.  (*Id.*)   However, as demonstrated above, even if the ALJ's representation of APRN Fuller's treatment notes is accurate, it is clear that these "exam" notes are not always congruent with the "interval history" on the same date, but rather were not edited on each treatment date to reflect changes from appointment to appointment.  APRN Fuller's treatment notes clearly reflect that Plaintiff experienced manic episodes, often presented for treatment with limitations in memory or concentration, impaired ability to interact with family and friends, anxious mood and affect.

13

Further, even assuming, *arguendo,* that the cited "exam" notes demonstrated "appropriate affect and intact cognition, memory, insight and judgment," it is unclear without a complete record whether the episodic nature of Plaintiff's mental impairments was sufficiently controlled to function in a work setting.

As Plaintiff is alleging that mental health issues limit her ability to work, the treatment records are necessary to evaluate her functional capacity. *Caruso*, 2019 WL 5853527, at *8 ("The absence of treatment records from the plaintiff's therapist qualifies as an 'obvious gap' because the plaintiff is alleging that mental health issues limited her ability to work."). Indeed, APRN Fuller's treatment history spans thirty-two months from April 2018 through December 2020. There are no records predating June 2018, and there is a seventeen-month gap in the record from May 2019 through October 2020, representing more than half of the treatment period with APRN Fuller. *Morales v. Berryhill*, No. 14-cv-2803 (KMK) (LMS), 2018 WL 679566, *16 (S.D.N.Y. 2018) (finding that failure to obtain treatment records including biweekly therapy sessions and monthly medication management meetings created obvious gap in the record particularly because "the ALJ's duty to develop the record is heightened in instances where the claimant alleges that he or she suffers from a mental illness"), *report and recommendation adopted*, 2018 WL 679492 (S.D.N.Y. 2018). Accordingly, a remand is appropriate so that the ALJ may resolve the gaps in the administrative record with regards to APRN Fuller's treatment of Plaintiff.

Finally, the Court notes that there is one treatment record dated September 14, 2018, from Plaintiff's therapist LCSW Jennifer Chokas. (R. 531-32-Intake Note). The record also contains two opinions from Ms. Chokas, a "To Whom It May Concern" letter dated April 1, 2018, and a Mental Impairment Questionnaire dated April 26, 2019, that were considered by the ALJ in determining Plaintiff's RFC. (R. 25, 383, 533-37.) Ms. Chokas indicated on the Mental

Impairment Questionnaire that she saw Plaintiff three times since September 2018. (R. 533.) There are no other treatment records in evidence. On remand, the ALJ will request treatment records from APRN Chokas for the disability period under review. The provider will submit a statement if there are no further records available during the disability period under review.

### C. Physical Therapy Records

Last, Plaintiff asserts that the ALJ erred in failing to obtain treatment records from Muldowney Physical Therapy. (Doc. # 18-1, at 4.) She argues that although "Day Kimball therapy notes are in evidence, the primary care records show that Muldowney Physical Therapy was also a member of the 'patient's care team.'" (*Id.* (citing R. 627, 615, 609, 604, 599, 593, 586; *see also* R. 581, 631, 636, 641, 645, 1029, 1056, 1061, 1066, 1071, 1075, 1182, 1200, 1211).) These treatment records referencing Muldowney Physical Therapy are from January 2019 through August 2020. Notably these records do not state whether Plaintiff engaged in physical therapy for that period of time and do not contain a referral by name to this physical therapy group by the provider.

The Commissioner responds that "the ALJ had no obligation to contact Muldowney Physical Therapy" under the regulations because "a claimant must inform the agency about all known evidence that relates to her impairments. (Doc. # 21-1, at 6 (citing 20 C.F.R. § 416.912(a); 20 C.F.R. § 416.945(a)).) Defendant asserts that "an ALJ is only required to make a reasonable effort to help a claimant obtain medi[c]al evidence for sources that the claimant has identified and given the agency permission to request the reports." (Doc. # 21-1, at 6 (citing 20 C.F.R. § 416.912(b)(1)).)

Defendant accurately states that Plaintiff failed to make any showing that *actual* medical records exist from Muldowney Physical Therapy for the disability period under review. (*Id.*, at 7

15

(emphasis in original).) However, the record contains references from Dr. Anbari, who is a listed member of Plaintiff's "care team" to a referral to physical therapy in June, November, and December 2017 for her right shoulder (R. 936, 926-27) and February 2019, for her left knee as part of her post-operative care. (R. 493 ("I recommend she continue working with therapy."), (R. 686).) Dr. Wessler, her primary care physician, noted in an August 2018 treatment note that she was attending physical therapy for her right knee. (R. 1033.) Orthopedist Dr. Scott Stanat referred Plaintiff for physical therapy in June 2018 for bilateral knee pain. (R. 500-01.) The first treatment record in evidence from Day Kimball Physical Therapy is dated January 10, 2018, stating that Plaintiff's mother called to report that her daughter's anxiety was very high and she was unable to cope with physical therapy at this time. (R. 392, 393 (right shoulder).) From November 7, 2018, through December 24, 2018, Plaintiff was seen on nine occasions for neck pain and post-operative right knee therapy. (R. 393-401, 402-05, 412-14, 415-16, 417-18, 419-24, 426-27, 428-29, 430.) On January 28, 2019, she was discharged from Day Kimball Physical Therapy because she missed six consecutive visits. (R. 438.) Here, Plaintiff reported that physical therapy was "ordered" after her shoulder and right knee surgeries. (R. 321-Disability Report dated 6/8/2020.) *See Schweers*, 2020 WL 5518326, at *12 ("The regulations require an ALJ to consider evidence that the claimant either submits – or informs the ALJ about – no later than five business days before the date of the scheduled hearing. 20 C.F.R. § 404.935(a)."). What is known is that there were referrals to physical therapy by her medical providers when Plaintiff was not treating with Day Kimball Physical Therapy. What is unknown is whether Plaintiff participated in physical therapy with Muldowney Physical Therapy during the disability period under review and whether those records would provide further insight into her functional limitations.

Defendant argues that "Plaintiff's speculation does not trigger the duty to further develop the record." (Doc. # 21-1, at 7 (citing *Aman v.* Colvin, 46 F. Supp. 3d 220 (W.D.N.Y. 2014))). However, in *Aman*, "[t]he Commissioner apparently made repeated attempts to determine whether the facility had additional records." *Aman,* 46 F. Supp. 3d, at 225 n.2. Here, the Commissioner has not demonstrated *any* effort to determine whether Muldowney Physical Therapy had any treatment records. Because the Court is remanding the case for further development of the record, the Commissioner will request treatment records from Muldowney Physical Therapy. Muldowney Physical Therapy will provide a statement if there are no treatment records during the disability period under review.

## IV.     CONCLUSION

Since the administrative record's completeness is a threshold question, the Court does not reach the question of whether substantial evidence supports the ALJ's RFC finding. *Darden v. Saul*, No. 3:19-cv-891 (SRU), 2020 WL 6293023, at *12 (D. Conn. Oct. 26, 2020) ("Because of the critical gaps in the record, I am unable to evaluate the merits of Darden's remaining arguments, including whether or not the decision is supported by substantial evidence."); *Schweers*, 2020 WL 5518326, at *14 ("Because the case will be remanded for further development of the record, which will necessarily affect the RFC determination . . . , the Court will not address this issue."); *Moreau*, 2018 WL 1316197, at *4 ("Even if the ALJ's decision might otherwise be supported by substantial evidence, the Court cannot reach this conclusion where the decision was based on an incomplete record."); *see also Delgado v. Berryhill*, No. 3:17-cv-54 (JCH), 2018 WL 1316198, at *19 (D. Conn. Mar. 14, 2018) (holding that because the case is "already being remanded for other reasons," and "because [the plaintiff's] RFC may change after full development of the record," the ALJ is likely to need to reconsider the other steps in the five-step analysis.).

On remand, the ALJ should address the additional claims of error not discussed by the district court. *Pacheco v. Saul*, No. 3:19-cv-00987 (WIG), 2020 WL 113702, at *8 (D. Conn. Jan. 10, 2020) ("On remand, the Commissioner will address the other claims of error not discussed herein."); *see also Moreau*, 2018 WL 1316197, at *4 ("Because the court finds that the ALJ failed to develop the record, it also suggests that the ALJ revisit the other issues on remand, without finding it necessary to reach whether such arguments would themselves constitute legal error justifying remand on their own.").

For the reasons stated above, Plaintiff's Motion for Order Reversing the Commissioner's Decision (Doc. # 18) is **GRANTED**. The Commissioner's Motion for an Order Affirming the Decision (Doc. # 21) is **DENIED**. The Commissioner's decision is vacated and the case is remanded for further administrative proceedings consistent with this opinion.

The Clerk is directed to enter judgment in favor of Plaintiff, effect remand to the Commissioner, and close the case. The Clerk is further instructed that, if any party subsequently appeals to this court the decision made after remand, that Social Security appeal shall be assigned to me (as the Magistrate Judge who issued the ruling that remanded the case).

This is not a recommended ruling. The parties consented to the jurisdiction of the undersigned Magistrate Judge, who may therefore direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. (Doc. # 14.) Appeals may be made directly to the appropriate United States Court of Appeals. *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c). It is so ordered.

                                                */s/ Maria E. Garcia, U.S.M.J.*
                                                    Hon. Maria E. Garcia
                                              United States Magistrate Judge